# No. 13-55421

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

### THE RAY CHARLES FOUNDATION,
Plaintiff-Appellant,

v.

### RAENEE ROBINSON; RAY CHARLES ROBINSON, Jr.;
### SHEILA ROBINSON; DAVID ROBINSON; ROBERT F.
### ROBINSON; REATHA BUTLER; and ROBYN MOFFETT,
Defendants-Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
AUDREY B. COLLINS, DISTRICT JUDGE - CASE NO. 12-CV-02725

---

## APPELLANT'S REPLY BRIEF

Yakub Hazzard
Daniel G. Stone
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, #3400
Los Angeles, CA 90067-3208
(310) 552-0130

ATTORNEYS FOR PLAINTIFF-APPELLANT
**THE RAY CHARLES FOUNDATION**

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ........................................................................................... 1

ARGUMENT ................................................................................................... 4

I.    ALL RELEVANT PRECEDENT POINTS TO A BENEFICIAL
OWNER'S STANDING UNDER THE 1976 COPYRIGHT ACT,
INCLUDING STANDING TO CHALLENGE A NOTICE OF
TERMINATION ......................................................................................... 4

    A.    Defendants' Contention that a Beneficial Owner Does Not
"Own Any of The Subject Copyrights," and that The
Foundation therefore Asserts the Rights of a Third Party,
Is Wrong ................................................................................... 6

    B.    Defendants' Contention that 17 U.S.C. §501(b) Sets Forth
an "Exception" to a General Prohibition Against A
Beneficial Owner's Standing Has No Basis in the Text of
the 1976 Copyright Act ................................................................. 9

II.    DEFENDANTS OFFER NO ALTERNATIVE EXPLANATION
FOR THE REGISTER OF COPYRIGHT'S REGULATION
WHICH PROVIDES THAT "ANY PARTY" MAY
CHALLENGE A NOTICE OF TERMINATION IN FEDERAL
COURT ..................................................................................................... 14

III.    DEFENDANTS DO NOT CONTEST THAT THE
FOUNDATION IS A PARTY CONTEMPLATED BY SECTIONS
203 AND 304 OF THE 1976 COPYRIGHT ACT ................................... 18

IV.    DEFENDANTS ARGUE AGAINST A PLAINTIFF'S ABILITY
TO PLEAD IN THE ALTERNATIVE, A LONG-RESOLVED
ISSUE OF LAW ....................................................................................... 21

    A.    If This Court Finds The Foundation's Standing
Allegations To Be Insufficient, It Should Grant Leave to
Amend ....................................................................................... 23

V.  DEFENDANTS MISCONSTRUE AND MISAPPLY THE
    DOCTRINE OF PRUDENTIAL STANDING ....................................... 27

CONCLUSION ..................................................................................... 35

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Andrus v. Glover Construction Industries,*
446 U.S. 608 (1980) ........................................................................ 11

*Ass'n of Data Processing Serv. Organizations, Inc. v. Camp,*
397 U.S. 150 (1970) ............................................................. 3, 27, 29

*Bennet v. Spear,*
520 U.S. 154 (1997) ........................................................................ 31

*Bread Political Action Committee v. Federal Election Commission,*
455 U.S. 577 (1982) ........................................................................ 11

*Chevron USA Inc. v. Natural Resources Defense Council, Inc.,*
467 U.S. 837 (1984) ................................................................. 16, 17

*Clarke v. Securities Indus. Ass'n,*
479 U.S. 388 (1987) ........................................................................ 29

*Cortner v. Israel,*
732 F.2d 267 (2d Cir. 1984) ............................................................ 7

*Elk Grove Unified School District v. Newdow,*
542 U.S. 1 (2004) ............................................................................. 33

*Entergy Corporation v. Riverkeeper, Inc.,*
556 U.S. 208 (2009) ................................................................. 12, 13

*Estate of McKinney v. United States*
71 F.3d 779 (9th Cir. 1995) ........................................................... 32

*Fleck & Associates v. City of Phoenix,*
471 F.3d 1100 (9th Cir. 2006) ....................................................... 33

*Gordon v. City of Oakland,*
  627 F.3d 1092 (9th Cir. 2010) ................................................. 23, 24

*Hong Kong Supermarket v. Kizer,*
  830 F.2d 1078 (9th Cir. 1987) ..................................................... 32

*Hunt v. Washington State Apple Advertising Comm'n,*
  432 U.S. 333 (1977) ............................................................. 27, 28

*Krainski v. State of Nevada,*
  616 F.3d 963 (9th Cir. 2010) ....................................................... 24

*Lacey v. Maricopa County,*
  693 F.3d 896 (9th Cir. 2012) ....................................................... 25

*Linda R.S. v. Richard D.,*
  410 U.S. 614 (1973) ................................................................ 28

*Manning v. Miller Music Corp.,*
  174 F.Supp. 192 (S.D.N.Y. 1959) .................................................... 8

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
  132 S.Ct. 2199 (2012) .............................................................. 28

*McCollum v. California Department of Corrections and Rehabilitation,*
  647 F.3d 870 (9th Cir. 2011) ....................................................... 32

*Mendonino v. Centinela Hosp. Med. Ctr.,*
  521 F.3d 1097 (9th Cir. 2008) ...................................................... 26

*Mills Music Inc. v. Snyder,*
  469 U.S. 153 (1985) ................................................................ 35

*Milne v. Stephen Slesinger, Inc.,*
  430 F. 3d 1036 (9th Cir. 2005) .............................................. 5, 10, 13

*Nat'l Federation of Federal Employees v. Cheney,*
  883 F.2d 1038 (D.C. Cir. 1989) ..................................................... 29

*PAE Gov't Servs. v. MPRI, Inc.,*
 514 F.3d 856 (9th Cir. 2007) .................................................. 21

*Pony v. County of Los Angeles,*
 433 F.3d 1138 (9th Cir. 2006) ................................................ 31

*Powers v. Ohio,*
 499 U.S. 400 (1991) .............................................................. 30

*Reddy v. Litton Industries, Inc.,*
 912 F.2d 291 (9th Cir. 1990) .................................................. 24

*Righthaven LLC v. Hoehn,*
 716 F.3d 1166 (9th Cir. 2013) ........................................... 5, 31

*Schellberg v. Empringham,*
 36 F.2d 991 (S.D.N.Y. 1929) .................................................... 7

*Silvers v. Sony Pictures Entm't, Inc.,*
 402 F.3d 881 (9th Cir. 2005) ............................................. 5, 31

*Thomas v. Mundell,*
 572 F.3d 756 (9th Cir. 2009) .................................................. 33

*Warth v. Seldin,*
 422 U.S. 490 (1975) .......................................................... 28, 30

*Western Radio Services Corporation v. United States Forest Service,*
 578 F.3d 1116 (9th Cir. 2009) ................................................ 13

*Wild Fish Conservancy v. Jewell,*
 730 F.3d 791 (9th Cir. 2013) .................................................. 28

*Williams v. United Airlines, Inc.,*
 500 F.3d 1019 (9th Cir. 2007) ................................................ 14

**United States Constitution**

Art. I § 8 ................................................................................ 15

## Other Authorities

17 U.S.C. § 203 ................................................................... passim

17 U.S.C. § 304 ................................................................... passim

17 U.S.C. § 501 ................................................................... passim

17 U.S.C. § 702 ......................................................................... 15

## Regulations

37 C.F.R. § 201.10 ............................................................... passim

## Other Authorities

3 Melville B. Nimmer and David Nimmer,
      Nimmer on Copyright § 12.02[D] (2012) ................................. 8

Hon. Antonin Scalia,
      *Judicial Deference to Administrative Interpretations of Law,*
      3 Duke L.J. 511 (1989) .......................................... 16, 17

## INTRODUCTION

Despite nearly a century of jurisprudence and legislation conferring standing on beneficial owners of copyright, Defendants now contend that a beneficial owner lacks prudential standing under the Copyright Act. Yet, Defendants have not identified a single case, treatise, or authority that holds or even suggests that a beneficial owner lacks prudential standing.

In fact, Defendants' entire prudential standing argument is based on the assertion that The Ray Charles Foundation "does not own any of the subject copyrights." (RB 7, 12.) For nearly a century, the federal judiciary has recognized that copyright authors who part with legal title (and their successors-in-interest) remain beneficial owners of copyright, a concept codified in the 1976 Act. In asking this Court to find that The Ray Charles Foundation (the "Foundation"), the beneficial owner of the late Ray Charles' copyrights, is asserting the rights of a third party, Defendants ask this Court to rewrite nearly a century of jurisprudence and legislation. The very concept of beneficial ownership of copyright refutes Defendants' argument.

Defendants further assert that this court should ignore the remainder of the 1976 Act, and look only to whether the Foundation has standing under Sections 203 and 304 of the Act. Leaving aside that the sole standing provision of the 1976 Act is Section 501(b), which explicitly confers standing on beneficial owners, Defendants do not challenge that the Foundation is both Mr. Charles' "personal representative" and his sole grantee by will. Therefore, the Foundation is expressly contemplated under Sections 203 and 304. In arguing that the Foundation does not assert an interest contemplated by Sections 203 and 304, Defendants ask this Court to disregard the plain language of those provisions.

Defendants' answering brief presents a series of requests for this Court to disregard well-established law. Defendants ask this Court to (1) interpret Sections 203 and 304 of the 1976 Copyright Act in isolation, and disregard both the remainder of the 1976 Copyright Act and nearly a century of case law construing beneficial ownership, (2) disregard the Register of Copyright's regulation found at 37 C.F.R. §201.10(f)(6) which expressly provides that "any party," and not merely a grantee, may challenge a termination notice in federal court, and (3) disregard long-

2

established precedent permitting a plaintiff to plead in the alternative. As discussed more fully below, this Court should reject each of Defendants' assertions.

Defendants' answering brief relies almost exclusively on a jumble of isolated statements from cases addressing standing under other statutory schemes. Notably, Defendants do not address any of their cited authorities in detail. Instead, Defendants' argument disfavoring a beneficial owner's standing to challenge termination notices is cobbled together from a series of general statements from inapposite cases which do not involve the Copyright Act or bear any analogy to the termination provisions at issue. As the Supreme Court made clear in one such case, "[g]eneralizations about standing to sue are largely worthless as such." *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 151 (1970).

Defendants' hodgepodge of general statements addressing standing under other statutes has little relevance to this matter. The relevant analysis involves the interpretation and application of Section 501(b) of the 1976 Act, the import and effect of 37 C.F.R. §201.10(f)(6), and the review of a nearly century-long chain of precedent conferring standing on beneficial

owners, all of which strongly favor this Court's finding that a beneficial owner of copyright has standing to challenge a notice purporting to terminate its beneficial ownership.

## ARGUMENT

I. **ALL RELEVANT PRECEDENT POINTS TO A BENEFICIAL OWNER'S STANDING UNDER THE 1976 COPYRIGHT ACT, INCLUDING STANDING TO CHALLENGE A NOTICE OF TERMINATION**

Defendants urge this Court to depart from universally-acknowledged principles of copyright law and statutory construction in order to find that a beneficial owner lacks prudential standing under Sections 203 and 304. (RB 7, 20.) Every step of Defendants' analysis deviates from long-established precedent.

As a threshold matter, Sections 203 and 304 do not stand apart from the remainder of the 1976 Act. Defendants' opposition ignores the majority of copyright-related precedent cited in the Foundation's Opening Brief and urges the Court to view Sections 203 and 304 in isolation. (*See, e.g.,* RB 34-35.) To support their argument, Defendants string together a series of disembodied quotes from cases addressing standing under other, unrelated statutory schemes, and urge this Court to view both Section 501(b) and the

concept of beneficial ownership as an "exception" that does not apply to termination rights. (RB 18.) Defendants' myopic view of Sections 203 and 304 has no basis in law.

In resolving the question of a beneficial owner's standing under Sections 203 and 304, this Court should not view those sections in isolation. Rather, the Court should follow its time-honored precedent of considering the entirety of the 1976 Act as a whole. *See Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (looking to various provisions of the 1976 Act, its legislative history, and the 1909 Act to determine a plaintiff's standing to sue for infringement). In construing or interpreting provisions of the 1976 Act, the Ninth Circuit looks to the plain language of the entire Act as a "starting point" before turning to its legislative history and other pertinent authority to resolve any statutory ambiguity. *See id.; see also Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169-1170 (9th Cir. 2013). This Court applies the same analysis to the termination provisions of the 1976 Act. *See Milne v. Stephen Slesinger, Inc.*, 430 F. 3d 1036, 1038-1039 (9th Cir. 2005) (looking to the 1909 Act, the 1976 Act, the CTEA and their legislative histories to interpret Section 304).

The district court recognized, and all parties concede, that Sections 203 and 304 are ambiguous as to which parties have standing to challenge a termination notice. (*See* AOB 38.) Therefore, this Court should look to the entirety of the 1976 Act, its legislative history, and other pertinent authorities to interpret Sections 203 and 304.

### A. Defendants' Contention that a Beneficial Owner Does Not "Own Any of The Subject Copyrights," and that The Foundation therefore Asserts the Rights of a Third Party, Is Wrong

Defendants contend that because "a 'beneficial owner' has no claim to ownership," the Foundation asserts Warner/Chappell's rights in this action. (RB 12-14, 20). In doing so, Defendants misrepresent not only Plaintiffs' allegations and contentions but the very concept of beneficial ownership.

The Foundation both alleges and asserts that it is the beneficial owner of Ray Charles' copyrights at issue. (*See, e.g.,* 2 ER 84 at ¶43(c).) Nevertheless, Defendants assert in their Opposition that the [Foundation] "does not allege … that either Ray Charles' estate or RCF has ever owned any of the copyrights in question . . . [and] concedes that it does not assert

its right to ownership." (RB 12-13.) These statements are simply false. Once again, the Foundation alleges and asserts that it is the successor-in-interest to Ray Charles and the beneficial *owner* of the copyrights at issue.

Defendants further contend that "a 'beneficial owner' has no claim to ownership," and therefore lacks prudential standing under the 1976 Act. (RB 20; *see also* RB 7, 12-14.) Defendants' assertion that a beneficial owner has no claim to ownership is proven false by the very term "beneficial owner" and by all pertinent legal authority. While a transferee holds legal title to the copyright, it does so as trustee on behalf of the copyright author or the author's legal successors. *See Schellberg v. Empringham*, 36 F.2d 991, 991, 994 (S.D.N.Y. 1929) (holding that even after an author transferred his copyrights, the author retained beneficial ownership, while the transferee "held [the copyright] in trust for the author."). Such an arrangement vests an interest in the copyright in transferors or their successors-in-interest. *See Cortner v. Israel*, 732 F.2d 267, 270 (2d Cir. 1984) (discussing a "beneficial owner's interest in the copyright.").

Similarly, Defendants' contention that a beneficial owner lacks prudential standing under the 1976 Act is baseless. Defendants do not cite

a single case, treatise, or authority holding or even suggesting that a beneficial owner of copyright asserts the rights of a third party or otherwise lacks standing under the 1976 Act. Such a finding would contravene nearly a century of case law and legislation recognizing the standing of beneficial owners under the Copyright Act. (*See* AOB 29-31, 41-42.)

The plain language of Section 501(b), the sole standing provision of the 1976 Act, places the legal and beneficial owners of an exclusive right in a copyrighted work on equal footing for purposes of enforcing their rights under the Act. The leading copyright treatise has read this language to confer standing on beneficial owners to protect those rights, "without any grant of priority to the legal owner." 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 12.02[D] (2012). Section 501(b) was intended to codify case law conferring standing on beneficial owners under the 1909 Act, including standing to sue for both infringement and for injunctive relief. *See Manning v. Miller Music Corp.*, 174 F.Supp. 192, 194 (S.D.N.Y. 1959). Plaintiffs cite to an unbroken line of authority dating back to 1923 whereby federal courts have uniformly recognized a beneficial

owner's standing under the both the 1909 Act and the 1976 Act. In stark contrast, Defendants do not cite a single case in the history of United States copyright law where a beneficial owner was found to lack standing to sue.

> ### B. Defendants' Contention that 17 U.S.C. §501(b) Sets Forth an "Exception" to a General Prohibition Against A Beneficial Owner's Standing Has No Basis in the Text of the 1976 Copyright Act

Without any precedent favoring their argument that a beneficial owner lacks prudential standing under the 1976 Act, Defendants go on to contend that Section 501(b)'s conferral of standing on beneficial owners to sue for infringement is, in fact, an "exception ." (RB 18.) Defendants apparently contend that the 1976 Act includes, *sub silentio*, a general prohibition against a beneficial owner's standing. There is no statutory language, legislative history, or other any authority to support a purported general prohibition against a beneficial owner's standing under the 1976 Act.

Defendants assert "[t]hat Congress expressly conferred statutory standing on a beneficial owner in an infringement action, but not in termination disputes, is persuasive, if not 'decisive,' that none was

intended." (RB 19.) However, as noted in both the district court's order and in Appellant's Opening Brief, Congress did not confer standing on any party to challenge a termination notice. (1 ER 60; AOB 27.) Rather, the sole standing provision of the 1976 Act is Section 501(b), which expressly confers standing on both legal and beneficial owners of copyright "to institute an action for any infringement. . . ."

Section 501(b) provides beneficial owners the same standing as legal owners to enforce their rights under the 1976 Act. Therefore, by Defendants' logic, that section implies not only a general prohibition against a beneficial owner's standing, but also a general prohibition against a legal owner's standing, which would prohibit a legal owner from challenging a termination notice. Even Defendants concede that Warner/Chappell, the legal owner of Mr. Charles' copyrights, would have standing to challenge Defendants' termination notices. (RB 13-15); *see Milne*, 430 F. 3d at 1038, 1039 (adjudicating a legal owner's challenge to a termination notice). Defendants' argument for an implied general prohibition against a beneficial owner's standing has no basis in either the

text or legislative history of the 1976 Act, and undermines the central contention underlying Defendants' baseless third party standing argument.

Furthermore, Defendants' argument for an implied general prohibition against a beneficial owner's standing is undercut by the very cases on which Defendants rely. As Defendants' cited authorities make clear, courts find general prohibitions against standing and exceptions thereto only where such prohibitions and exceptions are explicit in the statutory scheme at issue. For example, in *Andrus v. Glover Construction Industries*, 446 U.S. 608, 616-18 (1980), the Supreme Court addressed the Federal Property and Services Act ("FPASA"), which expressly prohibits a federal agency from entering into certain contracts without first advertising procurements, and sets forth certain enumerated exceptions to that prohibition. (*See* RB 18.) In that case, the Supreme Court found that because FPASA clearly articulated a general prohibition and explicitly enumerated certain exceptions thereto, additional exceptions are not to be implied by law. *Andrus*, 446 U.S. at 616-17.

Similarly, the Federal Election Campaign Act at issue in *Bread Political Action Committee v. Federal Election Commission*, 455 U.S. 577, 583-84 (1982),

lists three categories of plaintiffs who may challenge that act's

constitutionality. (*See* RB 19.) Accordingly, the Supreme Court found that

a plaintiff outside those enumerated categories does not have standing to

bring a constitutional challenge. Unlike the statutes at issue in those cases,

the 1976 Act contains no prohibition against a beneficial owner's standing,

let alone any exception to that non-existent prohibition. In fact, the only

standing provision of the 1976 Act *confers* standing on beneficial owners.[1]

In further support of a purported silent general prohibition against

standing, Defendants cite to a dissent in *Entergy Corporation v. Riverkeeper,*

*Inc.,* 556 U.S. 208, 239 (2009). (RB 19.) But that case undercuts Defendants'

entire standing argument. The Supreme Court's majority opinion in that

case makes clear that (1) where a statute is silent on a particular issue,

courts should look at other provisions of the same statutory scheme and

the "historical context" of the statute to interpret statutory silence, and (2)

courts should generally defer to an administrative agency's interpretation

---

[1] Defendants also attempt to justify a *sub silentio* standing prohibition by referencing a terminated grantee's preferred negotiating position. (RB 20). But that preferred position exists only if the underlying termination notice is proper. Here, the Foundation challenges the propriety of Defendants' 39 conflicting and facially defective termination notices.

of the statute it administers. *Entergy Corp.*, 556 U.S. at 223. "It is eminently reasonable to conclude that [the statute's] silence is meant to convey nothing more than a refusal to tie the agency's hands . . . ." *Id.*

Without irony, Defendants follow their argument for a general standing prohibition implied from Congressional silence with an argument that this Court should not infer a private right of action from Congressional silence. (RB 19.) But the Foundation does not seek to establish a new private right of action. Courts have already recognized that a party may seek a declaration invalidating a termination notice. *See, e.g.*, *Milne*, 430 F. 3d at 1038-1039 (adjudicating a legal owner's challenge to a termination notice); *see also* 37 C.F.R. § 201.10(f)(6) (recognizing "any party['s]" ability to challenge a termination notice in a court of competent jurisdiction). The Foundation merely asserts its standing to bring an existing private right of action.

In fact, the cases cited by Defendants concerning implied private rights of action reiterate the presumption against a right without a remedy, which is precisely what Defendants are seeking for beneficial owners. In *Western Radio Services Corporation v. United States Forest Service*, 578 F.3d

1116, 1125 (9th Cir. 2009) (internal citations and quotation marks omitted), the Ninth Circuit made clear that "when the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." (RB 19.) Similarly, in *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1020 (9th Cir. 2007), the Ninth Circuit made clear that because the FAA allows a whistleblower to file a complaint with the Secretary of Labor, the FAA does not allow for a whistleblower to file a complaint in federal court. (*Id.*) This Court should not allow for the outright termination of a beneficial owner's interests without providing a remedy to that beneficial owner. A beneficial owner's sole remedy is the ability to challenge an improper termination notice in federal court.

## II. DEFENDANTS OFFER NO ALTERNATIVE EXPLANATION FOR THE REGISTER OF COPYRIGHT'S REGULATION WHICH PROVIDES THAT "ANY PARTY" MAY CHALLENGE A NOTICE OF TERMINATION IN FEDERAL COURT

Defendants do not contest that the Register is charged with administering the 1976 Act, and specifically Sections 203 and 304.

14

Defendants offer no alternative reading of the Register's statement that "any party claiming that the legal and formal requirements for issuing a valid notice [of termination] have not been met" may challenge that notice, "including before a court of competent jurisdiction." 37 C.F.R. §201.10(f)(6); (RB 35-37). Instead, Defendants assert various arguments urging this Court to summarily disregard the Register's regulation. Each of Defendants' arguments is fundamentally flawed, and either misunderstands or misconstrues basic principles of administrative law and statutory construction.

Defendants contend that premising a beneficial owner's standing on an administrative regulation, "would run afoul of both Article III and the prudential standing requirements." (RB 27.) Defendants cite no authority to support this statement, which runs contrary to Supreme Court precedent. Article I, Section 8, Clause 8 of the United States Constitution vests Congress with the power to enact copyright law. Congress, in turn, has delegated the administration of the 1976 Act to the Register. 17 U.S.C. §§203(a)(4)(B), 304(c)(4), 702. In such a circumstance, Supreme Court precedent mandates judicial deference to an agency's "judgment as to how

to best carry out the Act."  *Chevron USA Inc. v. Natural Res. Def. Council,*

*Inc.,* 467 U.S. 837, 858 (1984).  Where, as here, there is a statutory ambiguity,

that ambiguity is "intended to enlarge, rather than confine, the scope of an

agency's power . . . ."  *Id.* at 862.  *Chevron* stands for the principle that "the

courts will accept an agency's reasonable interpretation of the ambiguous

terms of a statute that the agency administers."  Hon. Antonin Scalia,

*Judicial Deference to Administrative Interpretations of Law,* 3 Duke L.J. 511, 511

(1989).

   As set forth in the Opening Brief, whereas the remainder of the

Register's regulations refer only to a grantor or grantee, the Register

deliberately set forth that "any party" has standing to challenge a

termination notice.  (AOB 35-37.)  This regulation resolves the question

presented in this appeal.[2]  The Register's pronouncement in §201.10(f)(6),

_____

[2] Defendants contend that §201.10(f)(6) does not include an interpretation
of the Act because the Register "did not promulgate or administer any
regulation regarding standing to challenge notices of termination . . . ." (RB
28.)  First, §201.10 plainly interprets Sections 203 and 304, and section (f)(6)
specifically addresses the question of standing.  The Register has expressed
an opinion that "any party," and not merely a grantor or grantee, has
standing to challenge a termination notice.  Second, Defendants apparently
contend that because the word standing is not in the title of the regulation,
the regulation is not entitled to deference.  Again, Defendants cite no

which understands "any party," including a beneficial owner, to have standing to challenge a termination notice, articulates "the opinion of the body especially familiar with the problems dealt with by the statute" where that statute "deals with complex matters calling for expert knowledge and judgment." Scalia, *supra*, at 513 (internal citations and quotation marks omitted). This Court should defer to the Register's properly enacted regulation, or, at the very least, find that regulation highly persuasive.

Defendants further contend that the Register's regulation is improper because it "serve[s] to amend a statute." (RB 29.) This is plainly inaccurate. Again, the 1976 Act is silent as to which parties have standing to challenge a termination notice. (*See* AOB 38.) The Register did not amend the 1976 Act; she properly interpreted a statutory ambiguity. *Chevron USA Inc.*, 467 U.S. at 862.

---

precedent to support this contention. The Register enacted a regulation entitled "Notices of termination of transfers and licenses," wherein she interpreted a statutory ambiguity regarding standing to challenge those notices. Defendants cite no authority and make no cogent argument that would support this Court's disregarding §201.10(f)(6), which was properly enacted pursuant to the APA and addresses the ability to challenge notices of termination, which are the sole subject of the regulation.

Finally, Defendants misrepresent both the Register's regulations and the Foundation's contentions in asserting that §201.10(f)(6), if applied, would confer "standing on *anyone* to challenge a third party's notice of termination." (RB 8.) §201.10(f)(6) simply echoes the 1909 Act's standing requirement for injunctive relief by recognizing that "any party" with standing under the 1976 Act has standing to challenge a termination notice. (*See* AOB 36, n. 10.) Pursuant to 17 U.S.C. §501(b), the term "any party" embraces legal and beneficial owners of copyright. The Register's regulation articulates the only common-sense interpretation of the statutory ambiguity at issue: any party that otherwise has standing under the 1976 Act has standing to challenge a notice purporting to terminate that party's ownership interest.

## III. DEFENDANTS DO NOT CONTEST THAT THE FOUNDATION IS A PARTY CONTEMPLATED BY SECTIONS 203 AND 304 OF THE 1976 COPYRIGHT ACT

Defendants contend that because the phrase beneficial owner does not appear in Sections 203 and 304, the Foundation does not have standing to challenge Defendants' termination notices. (RB at 9.) However, Defendants do not challenge that the Foundation is both Ray Charles'

"personal representative" and the sole recipient of Mr. Charles' grants by will of his interests in the copyrights at issue, both of which are expressly referenced in Sections 203 and 304.  (AOB 49-50); *see* 17 U.S.C. §§ 203(a), 304(c).  Defendants concede that Sections 203 and 304 address the interests "of an author and/or his statutory heirs . . . ."  (RB 34.)  As Mr. Charles' personal representative and grantee by will, the Foundation, like Defendants, is a statutory heir expressly contemplated by Sections 203 and 304.  Defendants therefore concede that the Foundation is a party contemplated by the plain language of Sections 203 and 304, and that the district court erred in finding to the contrary.  (1 ER 63-64.)

As addressed in greater detail below, the Foundation plainly and permissibly alleges in the Complaint that the works at issue were works made for hire, or, "*in [the] alternative*," authored and originally owned by Ray Charles.  (2 ER 84 at ¶43(b),(c) (emphasis added); *see also* 1 ER 43.)  Mr. Charles' original ownership of the songs at issue is supported both by the Foundation's allegations in the Complaint and by the copyright registrations at issue, which list Ray Charles, and not Warner/Chappell or

any of its predecessors-in-interests, as the author and copyright claimant. (2 ER 84 at ¶43(b),(c); 2 ER 126-27.)

By the very act of filing the termination notices at issue, Defendants conceded that each of the compositions is not a work made for hire. *See* 17 U.S.C. §203(a) (allowing for termination of transfers "of any work other than a work made for hire. . ."). While, in their Opposition, Defendants voice their "strong disagreement with the [Foundation's] 'work-for-hire' allegations," Defendants do not dispute that the compositions at issue were authored and originally owned by Ray Charles. (RB 24.)

Ray Charles devised all of his contract rights and ownership interests in his intellectual property to the Foundation, which is the sole beneficiary of Mr. Charles' estate. (2 ER 71-72, 80, 83, 86 at ¶¶ 5, 33, 40, 49, 50; AOB 9.) Consequently, the Foundation is (1) the beneficial owner of Mr. Charles' copyrights (17 U.S.C. §501(b)), (2) Mr. Charles' sole grantee by will (17 U.S.C. §§203(a), 304(c)), and (3) Mr. Charles' "personal representative" and legal heir (*id*.). In those capacities, the Foundation has since Mr. Charles' death been the sole recipient of the royalties that were paid to Ray Charles during his lifetime. (2 ER 71-72, 80, 83, 86 at ¶¶ 5, 33, 40, 49, 50; AOB 9.)

Defendants' argument that the Foundation lacks standing because Sections 203 and 304 do not expressly reference beneficial ownership is a red herring. (*See, e.g.*, RB 7, 19, 34.) Sections 203 and 304 list various categories of potential beneficial owners, including an author/transferor or his successors-in-interest, *i.e.*, a grantee by will and personal representative. The Foundation falls within the categories of successors-in-interest expressly contemplated by Sections 203 and 304.

## IV. DEFENDANTS ARGUE AGAINST A PLAINTIFF'S ABILITY TO PLEAD IN THE ALTERNATIVE, A LONG-RESOLVED ISSUE OF LAW

Defendants contend that "[t]he factual narrative of RCF's complaint is that the Compositions were written as 'works-for-hire' . . . ." (RB 9.) Even if true, this is irrelevant. The Foundation was permitted to and did plead in the alternative that it is the beneficial owner of the compositions at issue. Fed. R. Civ. P. 8(d)(1)-(2); *see PAE Gov't Servs. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007) ("we allow pleadings in the alternative – even if the alternatives are mutually exclusive . . . . We do not call this process sham pleading; we call it litigation."). That the Foundation pled in the

alternative is evidenced by the district court's ruling. (1 ER 43 *citing* 2 ER 84, ¶43.)

In fact, Defendants tacitly admit that the Foundation adequately pled its beneficial ownership. On page 22 of its answering brief, Defendants state that the Foundation's "primary allegation" is that the compositions are works made for hire. To support this, Defendants cite to paragraph 43(b) of the Complaint, wherein the Foundation alleges that Defendants' termination notices are invalid because they pertain to works made for hire. In the very next sentence, the Foundation alleges that, "in alternative to (b) above, the copyright terminations of transfer served by Defendants are invalid because they attempt to nullify a renegotiation entered into in good faith by Ray Charles and his publisher at the time as evidenced in the 1980 Agreement, in violation of the 1976 Copyright Act." (2 ER 84, ¶43(c).) In fact, each allegation in paragraph 43(c)-(f) is premised on Ray Charles' authorship, and the Foundation's beneficial ownership, of the compositions at issue. (*Id.* at ¶43(c)-(f).)

The Foundation further alleges its beneficial ownership throughout the Complaint, referring to "its said intellectual property," "The

Foundation's rights under copyright law," and the compositions that Ray

Charles "wrote, either alone, or with a co-author or co-authors." (2 ER 71-

72, 76-77 at ¶¶5, 7, 24.) Finally, the Foundation alleges that the termination

notices are invalid even "assuming that the musical compositions are not

deemed to be works made for hire. . . ." (2 ER 82, ¶39.) Defendants'

ostrich-like reading of the Complaint does not change the Foundation's

pleading of its beneficial ownership.

### A. If This Court Finds The Foundation's Standing Allegations To Be Insufficient, It Should Grant Leave to Amend

Should this Court find that the Foundation did not adequately plead

either its beneficial ownership or its standing under the plain language of

Sections 203 and 304, the Court should grant the Foundation leave to

amend. (*See* AOB 50-51.) As Defendants concede, whether denial of leave

to amend "rests on an inaccurate view of the law, and is therefore an abuse

of discretion, requires de novo review of the underlying legal

determination." *Gordon v. City of Oakland*, 627 F.3d 1092, 1094-1095 (9th Cir.

2010) (internal citations omitted); (*see* RB 36 *citing Gordon*.) The district

court denied leave to amend based on its conclusion that the "Foundation's

interests do not fall within the 'zone of interests' the termination provisions were meant to protect, and it lacks third-party standing to assert the interests of Warner/Chappell." (1 ER 57.) As set forth both in the Opening Brief and above, this is an inaccurate view of the law. By virtue of Mr. Charles' grants, the Foundation has standing under the 1976 Act as a beneficial owner, a grantee by will, and a personal representative.

In opposing a prospective amendment, Defendants again rely on a series of disembodied quotes from inapposite cases. For example, in *Krainski v. State of Nevada*, 616 F.3d 963, 972 (9th Cir. 2010), plaintiff "conceded there were no new facts that she would include in her complaint to overcome its shortcomings." As discussed below, the Foundation makes no such concession. In *Gordon*, 627 F.3d at 1096, this Court denied leave to amend a federal minimum wage claim because plaintiff previously alleged not that she was paid less than minimum wage, but that loan reimbursement payments were deducted from her permissible wage. And in *Reddy v. Litton Industries, Inc.*, 912 F.2d 291, 296 (9th Cir. 1990), plaintiff alleged an injury arising from wrongful termination; this Court would not allow him to amend in order to allege "a completely new injury" caused by

racketeering or conspiracy. These cases bear no resemblance to the case at bar, where the Foundation would plead additional, consistent facts in support of the same claim for declaratory relief.

In fact, the cases cited by Defendants reflect that this Court has allowed for leave to amend even where the newly alleged facts could be viewed as inconsistent with those in the earlier complaint. *See Lacey v. Maricopa County*, 693 F.3d 896, 939 (9th Cir. 2012) (granting leave to amend conclusory allegations that a County Attorney was part of a conspiracy, even though the complaint "suggests that the [County Attorney] was concerned about the need to recuse himself from any decision making . . . ."). In contrast to *Lacey*, the Foundation has no need to contradict its prior factual allegations.

The Foundation's amended pleading would rely largely, but not exclusively, on the same facts concerning Mr. Charles' authorship of the compositions at issue and his agreements with Warner/Chappell's predecessors-in-interest. However, the Foundation would include additional facts concerning (1) Ray Charles' authorship of the compositions at issue, (2) the pertinent contracts and copyright registrations, and (3) the

course of dealing between Warner/Chappell, on the one hand, and Mr. Charles and the Foundation, on the other hand. The Foundation would also clearly allege that it is both the beneficial owner of the compositions at issue and Mr. Charles' personal representative and grantee by will.

Defendants contend that any amended pleading clarifying the Foundation's beneficial ownership would necessarily include contradictory factual allegations. (RB 8, 37.) But the Foundation's amendments will not contradict the facts alleged in the Complaint. The Foundation's work-for-hire allegations are not factual in nature, but are a legal conclusion based on the facts alleged. The Foundation will only amend to include further facts consistent with those alleged in the Complaint, along with a permissible alternative statement of the Foundation's standing. *See* Fed R. Civ. P. 8(d)(2). Defendants can amend to allege both a cognizable legal theory and sufficient facts to support that theory, and dismissal without leave to amend is therefore inappropriate. *Mendonino v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## V.   DEFENDANTS MISCONSTRUE AND MISAPPLY THE DOCTRINE OF PRUDENTIAL STANDING

As addressed above, Defendants cite no case or authority that holds or even suggests that a beneficial owner lacks standing under either the 1909 Act or the 1976 Act.  In fact, the Foundation's standing is expressly contemplated by Sections 203, 304, and 501 of the 1976 Act.  However, should this court look to prudential standing considerations, the Foundation plainly clears the low bar required to establish its prudential standing under the 1976 Act.  It would be illogical to conclude that a beneficial owner, whose interests are both specific to copyright law and codified in the 1976 Act, does not "arguably [fall] within the zone of interests to be protected or regulated by the statute." *Camp*, 397 U.S. at 153.

Defendants attempt to portray prudential standing as a difficult hurdle for the Foundation to overcome.  It is not.  The doctrine of prudential standing is pertinent where a party's Article III standing is tenuous, and looks to whether a plaintiff has a personal stake in the outcome of the litigation, *e.g.*, an economic injury.  *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 341 (1977).  Prudential

standing inquiries, including both the zone of interests and third party

standing inquiries, are "not meant to be especially demanding." *Wild Fish*

*Conservancy v. Jewell*, 730 F.3d 791, 797 (9th Cir. 2013) *quoting Match-E-Be-*

*Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S.Ct. 2199, 2210

(2012). "'The benefit of any doubt goes to the plaintiff.'" *Id.*

In cases addressing third party standing, standing is generally

conferred where the plaintiff has suffered an actual or potential economic

injury. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Linda R.S. v. Richard D.*, 410

U.S. 614, 619, n.3 (1973); *Hunt*, 432 U.S. at 345 (discussing the "financial

nexus" central to concerns raised by the third party standing doctrine.)

Along the same lines, the zone of interests test denies a right to review only

where:

> the plaintiff's interests are so marginally related to or
> inconsistent with the purposes implicit in the relevant statute
> that it cannot reasonably be assumed that Congress intended to
> permit the suit . . .the test is not meant to be especially
> demanding; *in particular, there need be no indication of
> congressional purpose to benefit the would-be plaintiff*. . . .

*Nat'l Fed'n of Federal Employees v. Cheney*, 883 F.2d 1038, 1042-1043 (D.C. Cir.

1989) *quoting Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399-400 (1987)

(emphasis added and internal quotation marks omitted).[3] In contravention of this precedent, the district court denied prudential standing to the Foundation because it found that Congress did not expressly contemplate beneficial owners in Sections 203 and 304. (1 ER 62.)

The cases cited in support of Defendants' prudential standing argument are both legally and factually distinguishable. Defendants rely on generalized, cherry-picked sound-bites that have no bearing on whether a beneficial owner of copyright has prudential standing under the 1976 Act. *See Camp*, 397 U.S. at 151 ("Generalizations about standing to sue are largely worthless as such.").

Nevertheless, the cases cited by Defendants favor the finding that a beneficial owner has standing under the 1976 Act. In *Powers v. Ohio*, 499

---

[3] Defendants argue that in *Clarke*, the Supreme Court "expressly stated" that the zone of interests analysis requires more from a would-be plaintiff asserting a private right of action. *Id.* at 400, n. 16. However, in the very footnote cited by Defendants, the Court expressly stated that (a) "the principle cases in which the 'zone of interest' test has been applied are those involving claims under the APA," and (b) that the 'zone of interest' test "is not a test of universal application . . .[w]e doubt that it is possible to formulate a single inquiry that governs all statutory and constitutional claims." *Id.* *Clarke* reiterates that this Court should rely on precedent addressing standing under the Copyright Act, which categorically recognizes beneficial owners' standing, and not on Defendants' cited cases which address standing under other, unrelated statutes.

U.S. 400, 408 (1991), the Supreme Court allowed a white criminal defendant to assert jurors' equal protection rights because he was impacted by the exclusion of all black jurors from his trial. There, the Court found that the defendant's claim was premised on a "strong statutory policy" reflecting 14th Amendment concerns. Here, the 1976 Act reflects a strong statutory policy to protect beneficial owners. (AOB 28.)

In *Warth*, 422 U.S. at 500, the Court found that a plaintiff "must generally assert his own legal rights or interests." Here, the Foundation asserts its rights and interests as the beneficial owner of Ray Charles' copyrights, as Mr. Charles' personal representative, and as Mr. Charles' sole grantee by will. In that same case, the Court made clear that a plaintiff "must allege specific, concrete facts demonstrating that the challenged practices harm *him*, and that he personally would benefit in a tangible way for the court's intervention." *Warth*, 422 U.S. at 508. The Foundation asserts its loss of the domestic royalties, which arise from its beneficial ownership of the copyrights at issue.

In *Bennet v. Spear*, 520 U.S. 154, 165-66 (1997), the Court looked to "the overall subject matter of [the] legislation . . .[and] textual evidence of a

statutory scheme" to confer citizen standing. Here, there can be little question that the overall subject matter and statutory scheme of the 1976 Act favor a beneficial owner's standing. Indeed, the 1976 Act codified the concept of beneficial ownership of a copyright. And in *Pony v. County of Los Angeles*, 433 F.3d 1138, 1140-1142 (9th Cir. 2006), the court made clear that the law draws a distinction between a party with substantive rights under a statute and a party assigned the mere right to proceeds of a suit. In fact, this Court's jurisprudence regarding standing to sue for infringement under the 1976 Act draws a bright line between legal and beneficial owners of copyright, who have statutory standing, and those assigned the right to proceeds of a suit, who do not. *See Silvers*, 402 F.3d at 884; *see also Righthaven LLC*, 716 F.3d at 1169-1170. To the extent that the prudential standing inquiry is applied to copyright law, that inquiry favors a finding that both legal and beneficial owners have standing under the whole of the 1976 Act, while those without such an interest do not.

The remainder of the prudential standing cases cited by Defendants address statutes and standing concerns that bear no relation to this case. In *McCollum v. California Department of Corrections and Rehabilitation*, 647 F.3d

870, 875, 878-79 (9th Cir. 2011), a Wiccan chaplain denied access to prisoners asserted claims based on prisoners' freedom of religion. The Court found that the Wiccan chaplain lacked prudential standing because he was not asserting his own rights but those of the prisoners, none of whom filed suit. In *Estate of McKinney v. United States*, 71 F.3d 779, 783 (9th Cir. 1995), this Court found that that the heirs of a deceased convict do not have standing to file a writ of error *coram nobis*, because "it would be extremely difficult to establish what limitations exist on the rights of heirs, relatives, or descendants to seek to set aside their forbear's or loved one's conviction . . . at a time when the law in a particular area had not yet been fully developed."

In *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1079, 1082 (9th Cir. 1987), a supermarket chain lacked prudential standing to assert the purported interests of its Southeast Asian customers by claiming that WIC milk-product coupons were discriminatory because many Southeast Asians are lactose intolerant. And in *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 14-15 (2004), a father lacked standing to assert a claim on behalf of his daughter because, by order of a state family court, his ex-wife had

the right to make all "final decisions" regarding the daughter. In contrast, the Foundation asserts the loss of its own beneficial ownership and its resulting right to domestic royalties.

The cases cited by Defendants also reiterate the strong correlation between a party's alleging a cognizable injury-in-fact and its prudential standing. In *Thomas v. Mundell*, 572 F.3d 756, 760-61 (9th Cir. 2009), a prosecutor lacked standing to challenge the establishment of separate DUI courts for Native Americans and Spanish speakers because he asserted only "abstract outrage," and failed to identify his own injury. In *Fleck & Associates v. City of Phoenix*, 471 F.3d 1100, 1103-1105 (9th Cir. 2006), a gay men's social club lacked standing to challenge a city's prohibition of "live sex act" businesses on privacy grounds because corporations have no right to privacy, and plaintiff thus failed to allege its own injury in fact. Once again, the Foundation asserts the loss of its beneficial ownership and its resulting loss of rights to the domestic royalties.

Contrary to Defendants' contention, conferring standing on beneficial owners will not glut the courts "with lawsuits from any third party profit or royalty participant . . . ." (RB 39.) Both parties concede that this case

presents an issue of first impression. While termination disputes have been litigated for years, as Defendants' counsel can attest, this case is the first to adjudicate whether a beneficial owner has standing to challenge an attempted termination of the very documents that give rise to that beneficial ownership. This is because an author's successors-in-interest and children are normally one and the same – most people grant their assets to their children, and not to a charitable foundation. The Foundation is the rare beneficial owner who is neither a copyright author nor his or her spouse or child.

Furthermore, the expense of litigating an action rooted in the obscure and highly technical provisions of Sections 203 and 304 will disincentivize the vast majority of beneficial owners from bringing suit. Instead, conferring standing on beneficial owners will only impact the rare instance where, as here, (1) the beneficial owner is not an author's spouse or child, (2) the underlying copyrights are valuable, and (3) the termination notices are facially invalid. Public policy favors a beneficial owner's standing to challenge a termination notice, so that (a) beneficial owners are not left with a right without a remedy, and (b) legal owners such as

Warner/Chappell, who benefit from the often "ill-advised and unremunerative grants" that Sections 203 and 304 were intended to remedy, do not have the sole discretion to challenge a notice of termination. *Mills Music Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985); (*see* AOB 24).

## CONCLUSION

For all of the above-referenced reasons, this Court should vacate the Judgment and remand this case to the district court.

Respectfully submitted,

December 30, 2013          ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: _/s/   Yakub Hazzard_____

Yakub Hazzard
Daniel G. Stone
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, #3400
Los Angeles, CA 90067-3208
Telephone:  310-552-0130
Facsimile:  310-229-5800

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,835 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 Book Antiqua 14 point font.

/s/ *Daniel G. Stone*
Yakub Hazzard
Daniel G. Stone
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Attorneys for Plaintiff-Appellant
The Ray Charles Foundation

December 30, 2013

| 9th Circuit Case Number(s) | |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  December 30, 2013 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)  /s/ Daniel G. Stone

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)